**CHARLES J. FLEISHMAN**
Bar# 46405
A Professional Corporation
8383 Wilshire Blvd., Suite 1030
Beverly Hills, California 90211-2495
erisa@erisarights.com
Telephone: (323) 653-9772
FAX: (323) 852-0871
Attorney for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIE CHELLINO, <br><br> Plaintiff, <br><br> vs. <br><br> KAISER FOUNDATION HEALTH PLAN, Inc a corporation; DOES 1 through 10, inclusive, <br><br> Defendants. | NO. C07-3019 CRB <br><br> OPPOSITION TO MOTION FOR SUMMARY JUDGMENT <br><br> Date: March 28, 2008 <br> Time: 10:00 a.m. <br> Courtroom 8 <br> Judge Charles R. Breyer |

## I. A NEW PARADIGM RULES.

The defendant's reliance on pre-<u>Abatie v. Alta Health</u> 485 F.3d 955 (9th Cir. August 15, 2006) cases is misplaced. The holdings of cases such as <u>Jordan v. Northrop</u> 370 F.3d 869 (9th Cir. 2003) and <u>Taft v. Equitable Life</u> 9 F.3d 1469 (9th Cir. 1993), that when a plan administrator denies a claim, the denial must be affirmed by the court as long as there is any rational reasoning that could support the decision, no longer apply to insured plans. The courts must now make "something akin to a credibility determination about the insurance company's or plan administrator's reason for denying coverage under a particular plan and a particular set of medical and other records." <u>Abatie</u> @ 969.

There are plenty of reasons to question the credibility of Aetna and its doctors. These have been set out in the Plaintiff's Motion for Summary Judgment.

Opp. to Motion for Summary Judgement    1

Just to mention a few, Aetna, after being requested to send Ms. Chellino's attorney the claim file, sent a video disk that did not contain the scene of Ms. Chellino riding a horse; Aetna failed to give Dr. Krames the surveillance videos to review bofore he examined Ms. Chellino; Aetna accepted as evidence that Ms. Chellino was not disabled the results of an FCE that was admitted by Aetna to be invalid; and Aetna relied on the opinions of dishonest doctors.

## II. DRS. KRAMES AND MARKS WERE DISHONEST.

Defendant writes that the plaintiff's Motion for Summary Judgment "implies (without offering evidence, or having the courage to state implicitly), that the reviewing doctors were on the take and were compensated to provide a specific desired result." Def's MSJ 16/10-14. Plaintiff did not mean to imply anything. Plaintiff meant to write exactly what defendant thinks that she meant to imply. Dr.s Krames and Marks were on the take.

Dr. Krames examined Ms. Chellino and her medical history. He knew from that history and examination that Ms. Chellino, shopped, drove a motor vehicle, talked, walked, and rode horses. Knowing all of this, he still found her totally disabled. He was then shown the videos of Ms. Chellino shopping, driving, talking to people, walking, and riding a horse. The Court will also review the videos. They show Ms. Chellino walking, shopping with the help of a box boy, driving, talking to people and riding the slowest horse in the world for a few feet. The video shows Ms. Chellino wearing a neck brace at times. The video shows Ms. Chellino mounting the horse that she rode from a platform. If Dr. Krames thought that it was possible for Ms. Chellino to walk, talk, shop, drive and ride a horse, and still be disabled, there is nothing in the video that would cause an honest man to change this opinion. The videos speak louder than anything.

But there is more. Aetna sent Dr. Krames a note with the videos that virtually told him exactly what was expected of him. "[R]ecent surveillance reveals Ms. Chellino's physical activity appears to be greater than your assessment

at the time of the IME. . . . After review of the surveillance video, would your opinion change regarding Ms. Chellino's capacity?" 410. The record indicates that Aetna knew that Krames would conform his opinion to what was expected of him. "Based on past experience, the surveillance could definitely cause Dr. Krames to re-think his opinion." 1334-35. Krames asked for $2100 to review the video, an amount that Aetna described as "excessive." Aetna paid the excessive amount. It was not buying a pig in a poke. It knew what it would get and it got what it paid for.

Dr. Marks, claiming to rely on Dr. Krames' IME, in fact ignored it. Dr. Krames wrote that a person could be disabled and still ride a horse. They are not incompatible. Yet, Marks wrote, "Any person who can care for a horse, lead a horse on walks, and mount and ride a horse, cannot in any reasonable way be thought of as being disabled from work." 893.

The FCE that Aetna had Ms. Chellino go through was, according to Aetna, invalid. "The physical therapist's report concluded that it was impossible to accurately assess plaintiff's abilities, because of her self-limiting behavior in the examination. A medical reviewer analyzed the physical therapist's report and concluded on May 26, 2006, that the FCE was invalid as a measure of plaintiff's actual functional abilities (i.e., her failure or refusal to attempt to participate in many of the activities as directed by the physical therapist was not valid as evidence that, in fact, she was unable to do so as she claimed.)" Def's MSJ 8/17-22. It never occurred to Aetna that Ms. Chellino might not have participated in many of the FCE tests because her disability prevented her from doing so. In Aetna's mind, an FCE test either proves there is no disability or it is invalid. Yet, FCE evidence interpreted as evidence that the claimant was malingering "could well have resulted from her true inability to perform due to debilitating pain and fatigue." Stup v. UNUM 390 F.3d 301, 311 (4th Cir. 2004). Dr. Marks relied on what Aetna admits was an invalid test. "In his report dated February 19, 2007, Dr.

Marks concluded that plaintiff's sub-optimal responses during the FCE indicated that her motivation was to continue to receive LTD benefits." Def's MSJ 9/16-18.

Both Dr. Marks and Dr. Krames have histories of working for disability insurance carriers. The plaintiff's Motion For Summary Judgment points out two cases where Dr. Marks reviewed medical records on behalf of insurance companies and the administrative record in this case shows that Aetna knew what Dr. Krames would do when he was shown the videos of Ms. Chellino; Aetna must have had prior experience with Dr. Marks and videos in the disability context otherwise it would not have known that he would change his opinion after viewing the innocuous videos of Ms. Chellino.

In spite of the above, Aetna claims that the plaintiff has presented no evidence of the doctors' bias.[1] The fact that Aetna's doctors are "regulars" is significant evidence of bias. In Black & Decker v. Nord 538 U.S. 822, 832 (2003) the Supreme Court acknowledged "that physicians repeatedly retained by benefits plans may have an incentive to make a finding of 'not disabled' in order to save their employers' money and preserve their own consulting arrangements." In Regula v. Delta Family Care 266 F.3d 1130, 1143 (9th Cir. 2001) vacated on other grounds, the court recognized that "Far more troubling is the conflict of interest inherent when benefit plans repeatedly hire particular physicians as experts. Especially in cases such as this one, where the plan administrator is also the funding source, these experts have a clear incentive to make a finding of 'not disabled' in order to save their employers money and to preserve their own consulting arrangements."

Finally, "Dr. Marks . . . pointed out that the treating doctor did not

---

[1] The court has ordered that there be no discovery until after the motions for summary judgment are heard. If the court feels that more evidence is required regarding the bias of Aetna's doctors, discovery in the form of depositions should be allowed.

Opp. to Motion for Summary Judgement    4

document, by examination, x-rays or testing, objectified musculoskeletal or neuromuscular abnormalities that would impair plaintiff from working." Def's MSJ 10/4-6. But "fibromyalgia . . . is a common, but elusive and mysterious disease. . . . Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia." <u>Hawkins v. First Union Corporation</u> 326 F.3d 914 (7th Cir. 2003). See also <u>Walker v. American Home Shield</u> 180 F.3d 1065 (9th Cir. 1999). If the symptoms of fibromyalgia are entirely subjective, how else can Dr. Marks' demand for "objectified musculoskeletal or neuromuscular abnormalities" be described other than as dishonest?

### III. THE PLAINTIFF HAS MET HER BURDEN OF PROOF.

The defendant argues that "Proof of disability is always a plaintiff's burden," that Ms. Chellino did not meet the burden of proof, and that "The burden of proof never shifted to Aetna to prove that she was not disabled." Def's MSJ 16/fn4 and 18/19-20.

In <u>Stup v. UNUM</u> 390 F.3d 301 (4th Cir. 2004) the court examined a claim for disability benefits based on a diagnosis of lupus and fibromyalgia. Unum agreed that the plaintiff had lupus and fibromyalgia but claimed that an FCE showed that she was capable of full time sedentary work. This case is similar except that we have an FCE that Aetna described as invalid. The <u>Stup</u> court wrote, "Unquestionably, this evidence (reports of the plaintiff's doctor that the lupus and fibromyalgia disabled her) satisfies Stup's initial burden of submitting proof that she could not perform even sedentary work. . . Just as clearly, this evidence would not require UNUM to award benefits if it had 'substantial evidence' that Stup could perform sedentary work. . . . UNUM ignores that while an administrator does not necessarily abuse its discretion by resolving an evidentiary conflict to its advantage, the conflicting evidence on which the

administrator relies in denying coverage must be 'substantial.'" In a footnote, the court pointed out that requiring UNUM to follow the opinion of the plaintiff's treating doctor was not an application of the treating physician rule abolished in Black & Decker v. Nord, supra, when the evidence opposed to the treating doctor's opinion is ambiguous and insubstantial. The court held that the FCE relied upon by UNUM and its doctors was insubstantial evidence. As for the opinions of the UNUM doctors based on the FCE, the court held, "An equivocal opinion -- especially one based on ambiguous test results -- simply does not provide 'substantial evidence.'" FCE evidence interpreted as evidence that the claimant was malingering "could well have resulted from her true inability to perform due to debilitating pain and fatigue."

    In this case, as in Stup, the plaintiff has presented evidence that she is totally disabled in the form of the opinions of her doctors. She has met her burden of proof. The burden now shifts to the defendant to prove, with substantial evidence, that she is not disabled. The opinion of a doctor whose opinion is based on an "invalid" FCE is not substantial evidence that will support a termination of benefits. See also Levinson v. Reliance Standard Life 145 F.3d 1321, 1331 (11th Cir. 2001). "Levinson submitted documents in this litigation that showed he still had a heart condition that two physicians agreed precluded him from performing the material duties of his occupation on a full-time basis. Thus, he submitted proof that he was still 'Totally Disabled' under Reliance's plan. Because Levinson satisfied his obligations under the terms of the plan, Reliance had to produce evidence showing that Levinson was no longer disabled in order to terminate his benefits."

    The burden of proof is upon Aetna to prove that Ms. Chellino is not disabled. Aetna has the opinions of two doctors. One relies on an invalid FCE and looks for objective evidence of disability from an illness that has no objective evidence. The other changed his opinion after viewing a video that showed Ms.

Chellino doing exactly what she told him she could do before he wrote that she was totally disabled.

## CONCLUSION

For the reasons stated in this brief and in the Plaintiff's Motion for Summary Judgment, the defendant's motion should be denied and the plaintiff's granted.

Respectfully submitted,

/s/

Charles J. Fleishman