1   SEDGWICK, DETERT, MORAN & ARNOLD LLP
    REBECCA A. HULL  Bar No. 99802
2   One Market Plaza
    Steuart Tower, 8th Floor
3   San Francisco, California 94105
    Telephone: (415) 781-7900
4   Facsimile: (415) 781-2635

5   Attorneys for Defendants
    Kaiser Foundation Health Plan, Inc., and Kaiser
6   Permanente Welfare Benefit Plan

7

8                  UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10

11  MARIE CHELLINO,                    CASE NO. C 07-03019 CRB

12           Plaintiff,                **DEFENDANTS' REPLY MEMORANDUM
                                       OF POINTS AND AUTHORITIES IN
13       v.                            SUPPORT OF MOTION FOR SUMMARY
                                       JUDGMENT**
14  KAISER FOUNDATION HEALTH
    PLAN, INC., AND DOES 1-10,         **DATE:  MARCH 28, 2008**
15
             Defendant.               **TIME:  10:00 A.M.**
16
                                       **DEPT:  8**
17

18

19

20          Defendants Kaiser Foundation Health Plan, Inc. ("KFHP") and Kaiser Permanente

21  Welfare Benefit Plan ("Plan") moved for summary judgment on the claims brought by plaintiff

22  Marie Chellino under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29

23  U.S.C. § 1001, *et seq.*, on the ground that the decision to terminate Plan benefits was not an

24  abuse of discretion, in light of the administrative record and the applicable law.

25          Benefits for long term disability ("LTD") were terminated effective August 16, 2006,

26  after (1) plaintiff was observed in surveillance videos over a period of 13 months (between May

27  2004 and June 2005) driving, shopping, carrying objects, walking, bending, pulling horses,

28  mounting horses, and riding horses, all without exhibiting pain behaviors; (2) an Independent

                                      -1-              CASE NO. C 07-03019 CRB
                    DEFENDANTS' REPLY IN SUPPORT OF MSJ

1   Medical Examination ("IME") physician opined, after physically examining plaintiff and

2   reviewing her medical records, as well as the surveillance tapes, that she was not substantially

3   limited in her activities and that she was capable of being employed in a sedentary job; and (3) a

4   labor market survey identified suitable available jobs that she was capable of performing.  The

5   termination of benefits was upheld on appeal, after an independent, Board-certified

6   rheumatologist opined that (1) the surveillance videos materially contradicted plaintiff's

7   subjective reports of disability, (2) her treating physician's statements regarding alleged disability

8   were internally inconsistent, and (3) the IME physician had accurately assessed plaintiff's actual

9   functional capabilities.

10          The Plan granted full discretionary authority to Aetna Life Insurance Company ("Aetna")

11  as the claim administrator for LTD benefits, and the termination of benefits was made pursuant

12  to such discretionary authority.  Plaintiff's opposition does not dispute that the Plan granted

13  discretionary authority to Aetna with regard to claim decisions, but argues that the decision was

14  improper and should be overturned.  That argument is supported only by misstatements of the

15  administrative record, and name calling against the doctors who examined plaintiff or reviewed

16  and opined upon her records.  Defendants' responses to plaintiff's substantive arguments are set

17  out in their opposition to plaintiff's own summary judgment motion, and to avoid burdening the

18  record unnecessarily, will not be repeated here; rather, defendants refer the Court to that filing.

19          Plaintiff's opposition consists primarily of continued insistence that her doctors'

20  credulous acceptance of her self-reported limitations similarly must be accepted by the Court at

21  face value, no matter what the evidence actually is.  The evidence, however, is impossible to

22  reconcile with plaintiff's portrayal of herself someone for whom everyday living is so difficult

23  that she cannot be expected to work at a sedentary job.

24          Indeed, given the strident tone of the opposition, it appears that not only did her former

25  counsel apparently not provide her current counsel with the complete record Aetna had sent him

26  (which included all of the videos of plaintiff's outdoor activities – specifically including the

27  documentation of her ability to easily climb onto a high sawhorse in a single step, in order to then

28  lift herself into her saddle and go for a horseback ride), but even when her counsel received a

-2-                                    CASE NO. C 07-03019 CRB

1    duplicate in the copy of the administrative record provided to him in the course of the litigation,

2    he seems not to have watched it and considered its implications. Whether that particular video

3    was or was not included in the courtesy copy of the administrative record that he received after

4    taking over the representation of plaintiff, her treating doctor had it and her former counsel had it

5    and as of the initial disclosures in this case, current counsel had it – yet plaintiff still insists that

6    no one could review it and conclude in good faith that plaintiff has the strength to work at a

7    sedentary job.

8         Plaintiff's off-hand reference to the possibility of conducting discovery before the Court

9    rules on the motions should be rejected. There is no need for discovery in order to resolve the

10   question of whether it was an abuse of discretion for Aetna to determine that, on all of the

11   evidence, plaintiff no longer met the Plan's definition of "disabled."

12        Moreover, it appears that plaintiff's aim in seeking discovery will be to try to discredit the

13   merits of the decision – that is, to question how and why the reviewing doctors reached the

14   opinions they did. That is not a proper subject for discovery, according to courts that have

15   addressed the question. *See, e.g., See, e.g., Ford v. Motorola Inc. Involuntary Severance Plan*,

16   2007 WL 162680 (D. Az. 2007), at *7 n.2 ("The Court, having considered the inherent conflict

17   of interest . . . finds that additional discovery is not necessary"); *Shemano-Krupp v. Mutual of*

18   *Omaha Ins. Co.*, 2006 WL 3365595 (N.D. Cal. 2006), at *9 ("Plaintiff requests discovery to

19   uncover the extent of other possible conflicts. . . . Plaintiff's request to take additional discovery

20   is DENIED.").

21        Here, plaintiff has not specifically identified what discovery she would seek, but vaguely

22   mentions "depositions of doctors" without any real explanation. The clearest articulation of the

23   fallacy of her position is found in *Harper v. Unum Life Ins. Co.*, 2007 WL 1792004 (E.D. Cal.

24   2007), where the plaintiff sought depositions of claim analysts and medical personnel. *Id.* at *2.

25   In rejecting the argument that she had a right to conduct such discovery, the district court ruled:

26              Defendant argues, and this Court agrees, that the depositions
                Plaintiff seeks are not related to conflict of interest, but rather seek
27              information related to a challenge to the decision made by
                Defendant.  Plaintiff argues that the discovery *is* related to a
28              conflict of interest because it will reveal that Defendant and its
                employees ignored and/or contradicted evidence specifically to

-3-                                    CASE NO. C 07-03019 CRB
DEFENDANTS' REPLY IN SUPPORT OF MSJ

deny Plaintiff's claim for benefits.  Plaintiff's reasoning, though, misunderstands the distinction between conflict of interest discovery and discovery on the merits of her claim.  Despite her belief, the discovery Plaintiff seeks goes *directly* to the reasoning behind the denial. . . .  Under the abuse of discretion standard applicable to this case, however, the administrative record stands on its own, meaning that the case will be evaluated solely on the information contained within it.  This renders the motivations and thought processes behind the actions of little use to the Court.

*Id*. at *5 (emphasis in original).[1]

At the end of the day, the question for this Court is whether, given all of the multitude of evidence in the administrative record, the decision to terminate LTD benefits was an abuse of discretion.  In a very recent opinion, the Fourth Circuit provides an especially instructive explanation of the court's role where the ERISA plan in question grants the administrator discretionary authority:

Under no formulation, however, may a court, faced with discretionary language like that in the plan instrument in this case, forget its duty of deference and its secondary rather than primary role in determining a claimant's right to benefits.  The abuse of discretion standard in ERISA cases protects important values: the plan administrator's greater experience and familiarity with plan terms and provisions; the enhanced prospects of achieving consistent application of those terms and provisions that results; the desire of those who establish ERISA plans to preserve at least some role in their administration; and the importance of ensuring that funds which are not unlimited go to those who, according to the terms of the plan, are truly deserving.  Thus, the language of discretion in an ERISA plan is a message to courts, counseling not judicial abdication, to be sure, but a healthy measure of judicial restraint.

Evans v. Eaton Corporation Long Term Disability Plan,, 514 F.3d 315,  at 323 (4th Cir. 2008) [internal citations omitted].

---

[1] As *Harper* held, discovery aimed at the merits of reviewing doctors' opinions – that is, why they reached the conclusions they did and on what basis – is not "conflict" discovery, and thus is not appropriate in any case, as review will be for abuse of discretion (and a fiduciary cannot be found, on the basis of information that was not before it, to have abused its discretion).  Even when a court's review is *de novo*, however, a case will be decided on the basis of the administrative record, and discovery will be appropriate only when and to the extent that the reviewing court requires additional information in order to understand the administrative record. *See Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 943-44 (9th Cir. 1995).

-4-                                    CASE NO. C 07-03019 CRB
DEFENDANTS' REPLY IN SUPPORT OF MSJ

1    On the record in this case, there was no abuse of discretion, and defendants' motion for

2    summary judgment should be granted.

3

4    DATED: March 14, 2008          SEDGWICK, DETERT, MORAN & ARNOLD LLP

5

6    By: _____
          Rebecca A. Hull
7         Attorneys for Defendants
          Kaiser Foundation Health Plan, Inc., and Kaiser
8         Permanente Welfare Benefit Plan

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28