IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIE CHELLINO,<br><br>    Plaintiff,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN,<br><br>    Defendant.                             / | No. C 07-03019 CRB<br><br>**ORDER GRANTING MOTION FOR FEES** |

    Now pending in this ERISA case is Plaintiff's motion for attorneys' fees. In March 2008, the Court granted summary judgment in favor of Kaiser and against Plaintiff, finding that the Plan's determination that Plaintiff was no longer disabled from working at any occupation was not an abuse of discretion. See docket no. 30. In November 2009, the Ninth Circuit reversed that decision, and remanded to the Court to enter summary judgment in favor of Plaintiff. See Chellino v. Kaiser Found. Health Plan, Inc., 2009 WL 3651567, *3 (9th Cir. Nov. 5, 2009). The parties entered into a stipulation providing in part that "[t]he plaintiff will seek attorneys fees and costs according to the Local Rules of this Court, if the parties cannot agree on an amount." See docket no. 55 at 2. The Court entered an amended judgment. Id. at 3.

    Plaintiff has now brought a motion for fees pursuant to 29 U.S.C. § 1132(g), in which she seeks an attorneys' fee award of $108,405, and costs of $1,726.75. See Fleishman Decl. at ¶¶ 7, 13.

Plaintiff calculates counsel's fees as follows:

$550 per hour rate

x 189.1 hours already billed + 8 hours anticipated in preparing reply in support of fee motion (197.1 hours) =

_____

$108,405.  Id. at ¶¶ 5, 7.

In support of Plaintiff's rate, counsel asserts that he has handled about 135 ERISA cases, has been awarded fees of $550 per hour in two previous cases, and was recognized repeatedly as a "California Super Lawyer in the field of ERISA."  See id. at ¶¶ 8-12.  In support of the hours billed, Plaintiff attaches counsel's billing records.  Id. Ex. A.

Plaintiff calculates costs as follows:

$350 filing fee

+ $455 filing fee for appeal to Ninth Circuit

+ $276.84 printing of opening brief in Ninth Circuit

+ $98.51 printing of reply brief in the Ninth Circuit

+ $546.40 copying excerpts of record for the Ninth Circuit

_____

= $1,726.75.  Fleishman Decl. at ¶ 13.

Plaintiff attaches no further documentation of costs.

## LEGAL STANDARD

ERISA law provides that "[i]n any action under this subchapter. . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1).  "The party seeking fees bears the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours and the rates claimed."  Welch v. Metropolitan Life Ins. Co., 480 F.3d 942, 945-46 (9th Cir. 2007).

//

**DISCUSSION**

"[A]s a general rule, the prevailing party on an ERISA claim is entitled to attorney's fees, 'unless special circumstances would render such an award unjust.'" United Steelworkers of Am. v. Ret. Income Plan for Hourly-Rated Employees of Asarco, Inc., 512 F.3d 555, 564 (9th Cir. 2008) (quoting Hensley v. Eckerhart, 461 U.S. 424, 429 (1983)).  By winning her appeal in the Ninth Circuit, Plaintiff is the prevailing party; neither party has pointed to any applicable special circumstances.  Defendant argues, however, that the court should not exercise its discretion to grant attorneys' fees.  Opp. at 3.

1. Hummell Test

The Ninth Circuit has adopted a five-part test to determine whether attorneys' fees should be awarded in ERISA cases: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or resolve a significant legal question regarding ERISA; (5) the relative merits of the parties' positions.  See Hummell v. S.E. Rykoff & Co., 634 F.2d 446, 453 (9th Cir. 1980).  No one factor is necessarily decisive, and some may not be relevant in particular cases.  See Smith v. CMTA-IAM Pension Trust, 746 F.2d 587, 590 (9th Cir. 1984).  Nonetheless, "[b]ecause an employee's resources are generally limited . . . and ERISA is intended to afford plan participants effective access to the courts, the ability of the defendant to satisfy an award of fees is a key factor."  See Fleming v. Kemper Nat'l Svcs., Inc., 373 F. Supp. 2d 1000, 1005 (N.D. Cal. 2005) (citing Smith, 746 F.2d at 589-90).

A. Degree of Defendants' Culpability or Bad Faith

Defendants argue that they did not act with bad faith in this action, and that "[n]o where in the Ninth Circuit's November 5, 2009 opinion do the words 'bad faith,' or any functional equivalent, appear."  Opp. at 4.  While this is true, the Ninth Circuit order detailed numerous misjudgments made by Defendants, including Defendants' conclusion that surveillance footage of Plaintiff undermined her subjective complaints and self-reported

3

limitations, when in the Ninth Circuit's view, the footage supported Plaintiff's claims. See Chellino, 2009 WL 3651567 at *2. The court concluded that "[g]iven Aetna's inherent conflict of interest, reliance on unsupported evidence, and failure to credit evidence not so flawed, Aetna's decision to terminate [Plaintiff's] benefits was an abuse of discretion." Id. at *3. While there was no finding of bad faith, the Ninth Circuit's findings do demonstrate culpability on Defendants' part, which weighs slightly in favor of granting fees. See Langston v. N. Am. Asset Dev. Corp., 2010 WL 330085, *3 (N.D. Cal. Jan. 20, 2010).

### B. Ability of Defendants to Satisfy a Fee Award

Defendants do not dispute that they could satisfy a fee award. Opp. at 4. Defendants argue only that this factor alone does not warrant the granting of an award, particularly where other factors militate against an award. Id. at 4-5. According to Smith, however, absent special circumstances, a prevailing ERISA employee should ordinarily receive attorney's fees from the defendant based on this factor alone. See 746 F.2d at 590. This factor certainly weighs in favor of granting fees.

### C. Whether an Award Against Defendants Would Deter Others

Defendants argue that "[t]here is no evidence that an award of fees would deter the Defendants from acting in similar circumstances, as the issues presented here are case specific based on the medical, surveillance, and other evidence submitted relating solely to plaintiff." Opp. at 5. But every ERISA case is fact-specific. Moreover, an award of attorneys' fees would deter other plan administrators from abusing their discretion in evaluating conflicting evidence in future cases. See Carpenters S. Cal. Admin. Corp. v. Russell, 726 F.2d 1410, 1416 (9th Cir. 1984) ("If defendant employers face the prospect of paying attorney's fees for successful plaintiffs, they will have added incentive to comply with ERISA"); McElwaine v. U.S. West, Inc., 176 F.3d 1167, 1173 (9th Cir. 1999) ("A fee award would deter other employers from forcing beneficiaries to undertake costly litigation to preserve their claims"); and Sluimer v. Verity, Inc., 2008 WL 5048434, *3 (N.D. Cal. Nov. 24, 2008) ("An award of attorneys' fees based on a plan administrator's incorrect

decision signals to other plan administrators that they should not similarly abuse their discretion."). Accordingly, this factor weighs in favor of granting fees.

### D. Whether the Party Requesting Fees Sought to Benefit All Participants

Defendant argues that Plaintiff did not seek to benefit all Plan participants, nor to resolve a significant legal question concerning ERISA. Opp. at 5. Plaintiff does not argue to the contrary. See Reply at 7 (omitting discussion of this factor). Thus, this factor is neutral.

### E. Relative Merits of the Parties' Positions

Defendants argue that "[a]lthough the district court's judgment in favor of defendants was reversed by the Ninth Circuit, there was evidence in the administrative record that cast doubt upon plaintiff's claimed disability," and that despite losing on appeal, "defendants' arguments nevertheless had merit." Opp. at 5. This Court certainly found that Defendants' arguments had merit, such that it granted summary judgment in Defendants' favor. See docket no. 30. However, the Ninth Circuit determined that Plaintiff's argument had greater merit. See Chellino, 2009 WL 3651567 at *3. This factor asks the Court to assess the relative merits of the parties' positions. Accordingly, this factor weighs in favor of Plaintiff. See Smith, 746 F.2d at 590 ("fifth Hummell factor . . . is, in the final analysis, the result obtained by the plaintiff"); Sluimer, 2008 WL 5048434 at *4 (entry of summary judgment for Plaintiff equivalent to finding that Plaintiff's position was more meritorious).

### F. Conclusion as to Hummell Test

As all of the Hummell factors either favor Plaintiff or are neutral, the Court will award attorneys' fees in this case.

## 2. Reasonableness of Requested Award

Defendants argue that even if the Court does award fees, the amount requested should be vastly reduced. See Opp. at 6.

### A. Excessive Entries

First, Defendants argue that individual billing entries are excessive. Id. For example, they argue that the Court should not award fees for 24.9 hours Plaintiff's counsel spent in preparation for a mediation that did not take place because Plaintiff did not appear. See Opp.

5

at 6-7.  In his Reply, Plaintiff's counsel contends that he had been unable to notify Plaintiff of the mediation because Defendants had rendered her homeless by terminating her benefits, that Plaintiff was available to participate in the mediation by telephone, and that the mediation failed only because "Aetna refused to offer enough to settle the case."  Reply at 8.  Defendants filed an objection to Plaintiff's Reply, asking that the Court strike that portion of the brief because counsel's allegations "lack[] any shred of evidentiary support" and are "untrue."  See docket no. 62.  While the Court will not strike that portion of the brief, it will also not rely on it.  The Court is simply not in a position to determine what happened that day, and it need not: Defendants have not articulated why Plaintiff's failure to appear should be held against Plaintiff's counsel.  This time entry should stand.

Other disputed time entries are similarly difficult to second guess at this late date.  For example, Defendants argue that counsel having spent 15.7 hours reviewing the administrative record was excessive and "likely duplicative."  Opp. at 7.  In his Reply, Plaintiff's counsel argues that the administrative record was "not thrilling reading," necessarily fact-intensive, and contained more than 1600 pages.  Reply at 10.  The Court is not in a position to say, as Defendants do, that such work should have taken 7.5 hours, see Opp. at 8, or some other figure.

Counsel's billing records appear to be reasonable, and will stand.

### B. Billing Rate

Next, Defendants argue that counsel's rate of $550 per hour is unreasonable, and propose that counsel be awarded a rate of $400 per hour instead.  See Opp. at 10-12.  Defendants note that "Billing rates 'should be established by reference to the <u>fees that private attorneys</u> of an ability and reputation comparable to that of prevailing counsel <u>charge their paying clients for legal work of similar complexity</u>."  Id. at 11 (citing, with emphasis added, Welch, 480 F.3d at 946).  Defendants complain that "Plaintiff has presented no [such] evidence" but instead asserts only that prior awards supported his claimed hourly rate of $550.  Opp. at 12.  They then assert, without authority, that "prior court awards are not evidence of a reasonable hourly rate."  Id.  Defendants also include a declaration from

6

1  opposing counsel in this case, stating that "[t]he hourly rate that Mr. Fleishman seeks is at a
2  level that would be charged by (or judicially awarded to) only the best and brightest of
3  ERISA litigators" and that Plaintiff's counsel "has not in this litigation demonstrated
4  extraordinary skill such as to be included in the upper echelon of plaintiff's counsel, nor was
5  there any exceptional difficulty in this routine ERISA case." Hull Decl. at 2.

6        As an initial matter, the Court does not give great weight to losing counsel's
7  characterization of prevailing counsel's work as not extraordinarily skillful; it was
8  sufficiently skillful to convince the Ninth Circuit. Also, the Court has no basis for finding
9  that counsel was not among "the best and brightest of ERISA litigators." Counsel was
10 recognized repeatedly as a "California Super Lawyer in the field of ERISA," see Fleishman
11 Decl. at ¶ 12, and attached to his Reply a filing by opposing counsel in another case
12 characterizing him as "within the top echelon of plaintiffs' ERISA practitioners in
13 California," Reply Ex. 1. Based on its own experience of counsel in litigation, the Court can
14 opine favorably on counsel's abilities. See Welch, 480 F.3d at 946 ("district court has the
15 benefit of first-hand contact with the litigation and lawyers involved").

16       Nonetheless, while it is relevant that counsel has been awarded fees of $550 per hour
17 in two previous cases, these are just two of the 135 which he has handled. See Fleishman
18 Decl. at ¶ 8. Notably, the Court came across a 2009 case in which another court, assessing
19 another ERISA plaintiff counsel's fee request, noted that Charles Fleishman had submitted a
20 declaration stating that he charges $500 per hour. See Schofield v. Metropolitan Life Ins.
21 Co., 2009 WL 1035224, *2 (E.D. Cal. April 17, 2009). Though that case was from 2009, the
22 economy has not changed significantly since then. See also Hawkins-Dean v. Metro. Life
23 Ins. Co., 2007 WL 2735684, *1 (C.D. Cal. Sept. 18, 2007) (referencing 2007 rate for Charles
24 Fleishman of $450 an hour). Indeed, at the motion hearing held on February 5, 2010,
25 Plaintiff's counsel conceded that he has been awarded fees ranging from $500 to $550 in the
26 past year.

27       Still more problematic, counsel failed to submit any evidence of what "attorneys of an
28 ability and reputation comparable to that of prevailing counsel charge their paying clients for

1  legal work of similar complexity." Welch, 480 F.3d at 946.  Typically, counsel will attach to
2  a fee motion declarations from colleagues attesting to similar billing rates; counsel has not
3  done so.  It is not unreasonable to ask that counsel meet his burden of supporting the rates
4  claimed with some evidence of what other ERISA counsel are paid.  See Camacho v.
5  Bridgeport Financial, Inc., 523 F.3d 973, 980 (9th Cir. 2008) ("To inform and assist the court
6  in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory
7  evidence– in addition to the attorney's own affidavits– that the requested rates are in line
8  with those prevailing in the community"); and Hawkins-Dean, 2007 WL 2735684 at *1
9  (noting, where Charles Fleishman was awarded rate of $450 per hour, that he "had submitted
10 declarations by other attorneys stating that $450 is a reasonable hourly rate for attorneys of
11 similar credentials and experience").  The Court should not have to assess the reasonableness
12 of counsel's rate in a vacuum.

13      In Langston, the court considered a requested rate of $550 per hour for a prevailing
14 plaintiff's ERISA lawyer.  The court noted that counsel had submitted "a number of
15 declarations, including one from [counsel himself], several from other attorneys practicing
16 ERISA law, and one from an expert on California attorney's fee awards, all of which state
17 that $550 is a reasonable rate for ERISA work as of 2009." Id., 2010 WL 330085 at *7.  The
18 court went on to hold:

> the declarations seem to establish only that a hypothetical 'market-supported' rate based primarily on the amounts awarded by other courts, who in turn were relying on fee award amounts in the decisions before them.  The Court is hesitant to contribute to this self-perpetuating pattern.  In light of the circumstances of this case, including counsel's skill and the present economic downturn, the Court finds that a <u>reasonable hourly rate for [counsel's] services is $400 per hour</u>. Id.

For the same reasons articulated in Langston, because counsel has recently both been awarded and charged clients $500 per hour, and because counsel has failed to submit any evidence of what comparable ERISA attorneys are paid for comparable work, the Court will decrease counsel's rate from his requested $550 per hour to $500 per hour.

    The Court will not use a multiplier to adjust the lodestar amount.  See Van Gerwen v. Guarantee Mut. Life. Co., 214 F.3d 1041, 1045 (9th Cir. 2000) (multiplier should be used only in rare and exceptional cases).

8

Accordingly, the Court grants a fee award of:

$500 per hour
x 197.1 hours =
_____
$98,550.

This is a reduction of about $10,000 from Plaintiff's fee request.

### C. Costs

Finally, Defendants argue that Plaintiff "failed to provide any invoices for the $921.75 incurred in printing the opening and reply briefs and copying the excerpts of record" and so "these costs should not be awarded." Opp. at 13. Civil Local Rule No. 54-1 requires that a bill of costs "must be supported by an affidavit," and that "[a]ppropriate documentation to support each item must be attached to the bill of costs." Plaintiff supported her request for the printing costs with an affidavit, but nothing more. There is no explicit requirement that counsel attach invoices, and the Court opts not to require them in this instance.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion and awards fees of $98,550, and costs of $1,726.75, for a total of $100,276.75.

**IT IS SO ORDERED.**

Dated: February 16, 2010

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE